MONACO, C.J.
 

 The sole issue before us arising out of this appeal is whether the exculpatory clause signed by the appellant, Marie Tat-man, is clear and unequivocal so that the appellee, Space Coast Kennel Club, Inc., is relieved of liability for her dog bite injury. While the able trial judge found that the clause was not ambiguous and granted the Kennel Club a summary judgment, we disagree and reverse.
 

 Mrs. Tatman and her husband sued the Kennel Club for injuries suffered as a result of a serious bite from a dog participating in a dog show sponsored by the Kennel Club. Taken in the light most favorable to the nonmoving party
 
 [1]
 
 , the facts reflect that Mrs. Tatman was in attendance at the show because a dog that she owned was entered as a participant in the function. Although Mrs. Tatman was not planning to show her dog herself, she was required in order to enter the dog to sign an entry form that described the dog in some detail, and then contained the following language:
 

 I certify that I am the owner of this dog and furthermore, I(we) certify and represent that the dog entered is not a hazard to persons or other dogs. I agree to not hold SCKC or Brevard County Parks & Rec Dept, liable for any accident or injury. (Emphasis supplied).
 

 The president of the Kennel Club testified during her deposition with respect to the exculpatory language as follows:
 

 Q. Do you understand that this form that Ms. Tatman signed, this entry form, to mean that if her dog got injured by another dog at the show, she would agree — she agrees not to hold Space Coast Kennel Club ... liable for it?
 

 [[Image here]]
 

 A. Yeah.
 

 Q. That’s what your — that’s what the kennel club is asking people to agree to, in part—
 

 A. Yes.
 

 Q. —is that if their dog is injured by another dog—
 

 A. Yes.
 

 Q. —that they won’t hold the kennel club liable?
 

 A. Correct.
 

 A form had to be filled out by owners for each dog participating in the show. Spectators and members of the public, however, were not required to sign a release of liability for being present during the show. Likewise, members, officers and directors of the Kennel Club were not required to sign a release form when they volunteered to work at the events. The club president further explained that the release form was specifically for those people actually entering dogs in the show, even though the dogs were frequently not shown by their owners. For instance, Mrs. Tatman’s dog was to be shown by her
 
 *110
 
 adult daughter. Thus, while dog owners certify on the form that their dog is not a danger to other dogs or persons, the owner may not even be present when the show takes place.
 

 On the afternoon of the dog show, Mrs. Tatman, while walking in a public area of the show, was attacked by a 100-pound, non-neutered, male Akita named “Eli” that was also in the dog show. Eli was on a leash and being held by a co-defendant, Leslie Kovacs, a professional dog trainer, when he attacked. Sally Jaffe, the owner of the Akita, was standing nearby with two of her other leashed dogs, one of which was a female in heat. Eh bit Mrs. Tat-man’s left ankle when she walked between Ms. Kovacs and Ms. Jaffe, and caused the injuries that are the basis of the suit.
 
 [2]
 

 Mr. and Mrs. Tatman brought suit for negligence against Ms. Jaffe, Ms. Kovacs and the Kennel Club. The Kennel Club moved for summary judgment based on the exculpatory clause contained in the dog show entry form. The trial court concluded that the exculpatory clause relieved the Kennel Club of any potential liability and granted the motion. This appeal followed.
 

 Our standard of review for a trial court’s legal determination that a release is effective to bar a negligence claim is
 
 de novo. See Cain v. Banka,
 
 932 So.2d 575, 578 (Fla. 5th DCA 2006). Using this standard, we conclude that because the clause is ambiguous, the trial court erred in granting summary judgment.
 

 An exculpatory clause is one that purports to deny an injured party the right to recover damages from a person negligently causing his or her injury.
 
 Cain,
 
 932 So.2d at 578 (citing
 
 Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP,
 
 832 So.2d 270 (Fla. 4th DCA 2002)). These clauses are by public policy disfavored in the law because they relieve one party of the obligation to use due care, and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss.
 
 Loewe v. Seagate Homes, Inc.,
 
 987 So.2d 758, 760 (Fla. 5th DCA 2008);
 
 Cain,
 
 932 So.2d at 578. Accordingly, exculpatory clauses are strictly construed against the party seeking to be relieved of liability.
 
 Sunny Isles Marina, Inc. v. Adulami,
 
 706 So.2d 920 (Fla. 3d DCA 1998).
 

 In addition, exculpatory clauses are enforceable only where and to the extent that the intention to be relieved from liability is made clear and unequivocal. The wording must be so clear and understandable that “an ordinary and knowledgeable person will know what he is contracting away.”
 
 Gayon v. Bally’s Total Fitness Corp.,
 
 802 So.2d 420, 421 (Fla. 3d DCA 2001);
 
 see also Raveson v. Walt Disney World Co.,
 
 793 So.2d 1171 (Fla. 5th DCA 2001).
 

 A phrase in a contract is ambiguous when it is of uncertain meaning, and thus may be fairly understood in more ways than one.
 
 See Nagel v. Cronebaugh,
 
 782 So.2d 436, 439 (Fla. 5th DCA 2001),
 
 review denied,
 
 816 So.2d 126 (Fla.2002). In the present case the clause runs afoul of the requirement for clarity and precision. The operative language — I agree to not hold SCKC or Brevard County Parks & Rec Dept, liable for any accident or injury — fails to define whose injuries are covered in a circumstance, even though there are multiple possibilities. It does not say, for example, that injuries to the signer of the form, or to the dog, or to both are
 
 *111
 
 covered by the exculpation, nor does it assert an exculpation for injuries caused by the dog to third parties. Likewise, the clause does not define whether injuries incurred by the signer at the show but not associated with a dog attack (a slip and fall, for example), are covered. Because of its patent ambiguity, we conclude that an “ordinary and knowledgeable” person would not, when viewing this clause, know what he or she was contracting away.
 
 See Greater Orlando Aviation Auth. v. Bulldog Airlines, Inc.,
 
 705 So.2d 120, 121 (Fla. 5th DCA 1998).
 

 The clause is actually most easily understood to be a release from liability for injury to a dog entered in the show, as opposed to the dog’s owner. The clause is found in an entry form for the dog, and is only signed by the dog’s owner, not by handlers, spectators, groomers or anyone else attending the show. As Mr. and Mrs. Tatman point out, if the owner is not handling the dog, or not even present at the show, there would be no reason to think that the hazy exculpatory language in the entry form applied to anything other than injury to the dog. Inasmuch as an “ordinary and knowledgeable” person would not, when viewing this clause, know what he or she was contracting away, we conclude that it was ambiguous, and that summary judgment in favor of the Kennel Club should not have been granted.
 
 See Greater Orlando Aviation Auth.,
 
 705 So.2d at 121.
 

 Accordingly, we reverse the judgment entered in favor of the Space Coast Kennel Club and remand this case for further proceedings.
 

 REVERSED and REMANDED.
 

 LAWSON and JACOBUS, JJ„ concur.
 

 [1]
 

 .
 
 See Delta Fire Sprinklers, Inc. v. OneBeacon Ins. Co.,
 
 937 So.2d 695, 698 (Fla. 5th DCA 2006),
 
 review denied,
 
 6 So.3d 607 (Fla.2007).
 

 [2]
 

 . Apparently, Eli had a history of aggression and in particular, of biting people's feet. After Eli was returned by a prior owner to the breeder due to the animal’s aggressive behavior, he bit the lower leg of the breeder’s next door neighbor. Instead of euthanizing Eli, the breeder gave him to Ms. Jaffe. Ms. Jaffe took Eli to training classes run by Ms. Kovacs.